**SIGNED THIS: June 22, 2007**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LARRY MORELAND and | ) | No. 06-81797 |
| MARIE MORELAND, | ) | |
| | ) | |
| Debtors. | ) | |

**O P I N I O N**

     One of the changes to the bankruptcy system introduced by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (2005) ("BAPCPA") is the auditing of cases. Section 603(a) of the 2005 Act provides that Chapter 7 and 13 cases in which the debtor is an individual may be audited to determine the accuracy, veracity, and completeness of petitions, schedules and other information that the debtor is required to provide. The audits are performed by public accountants pursuant to standards and procedures developed by the Attorney General or the Judicial Conference of the United States. Audits are to be performed in each case where the schedules of income and

expenses reflect a greater than average variance from the statistical norm of the district. Random audits are also performed in at least 1 out of every 250 cases.

The United States Trustee (UST) plays a relatively minor role in the audit process. Once a case is selected for audit, the UST notifies the debtor of the selection by a form letter advising that the auditor will initiate the process. The auditor sends out a document production request, as well as a form for the debtor to elect to allow the auditor to contact the debtor directly or to require that all communication be directed to the debtor's attorney.

Once the audit is complete, the auditor is to prepare and file a report of the audit that is required to identify whether the debtor made a material misstatement of income, expenses or assets. 28 U.S.C. § 586(f)(2)(A). If so, creditors are notified and the UST is to consider reporting the misstatement to the U.S. Attorney and whether, in a Chapter 7 case, to file a complaint to revoke the discharge. 28 U.S.C. § 586(f)(2)(A) and (B).

The Debtors, Larry and Marie Moreland (DEBTORS), filed their Chapter 13 petition on October 27, 2006. The DEBTORS agreed to a fee for their attorney of $2,500, which is the "no look" maximum fee in force in this District. Pursuant to the Court's standard procedure, an order was entered approving that fee.

On November 20, 2006, the UST filed a notice that the case had been selected for audit. At the same time, the auditor sent the DEBTORS' attorney a request for documents as well as the election form pertaining to communications with the auditor. The attorney, apparently without first consulting his clients, elected to require the auditor to communicate only with him, not the DEBTORS. The DEBTORS' attorney sent the DEBTORS a letter notifying them of the audit and asking them to compile the requested

documents. The letter also stated that the DEBTORS would not have to pay any additional attorney fees; rather, the attorney would apply for the fees to be paid through the Chapter 13 Plan in addition to the $2,500 already allowed.

The documents requested by the auditor include the following:

1. paystubs or payment advices for both DEBTORS for the six-month period prior to bankruptcy;

2. the DEBTORS' last two federal income tax returns; and

3. bank statements and cancelled checks for the six-month period prior to bankruptcy.

Also requested were documents relating to any divorce within three years prepetition, which was not applicable to the DEBTORS.

The audit turned out to be uneventful. The required documents were provided and on January 22, 2007, the auditor filed a Report of Debtor Audit finding no material misstatements concerning the DEBTORS' income, expenses or assets.

The DEBTORS' Chapter 13 Plan was confirmed on December 18, 2006. On January 30, 2007, the DEBTORS' attorney filed an Application for Compensation, supported by a summary of his time records, seeking an additional $840 in attorney fees for work performed related to the audit, plus costs of $42.98. A hearing was held on the Application and the Court took the matter under advisement.

## **ANALYSIS**

This is a matter of first impression for the Court. Under Section 329 of the Bankruptcy Code, an attorney representing a debtor is required to file a statement of the compensation paid or agreed to be paid for services rendered in connection with the

bankruptcy case. 11 U.S.C. § 329(a). The bankruptcy court is authorized to reduce the debtor's attorney fees to the extent they exceed the reasonable value of the services rendered. 11 U.S.C. § 329(b).

In a Chapter 13 case, "the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor." 11 U.S.C. § 330(a)(4)(B). That same provision requires the court to consider other factors such as the nature, extent and value of such services including (1) the time spent, (2) the rates charged, (3) whether the services were necessary or beneficial to the case, (4) the timeliness of the services, (5) the attorney's experience, and (6) the reasonableness of the charges as compared to customary charges by other attorneys. *See* 11 U.S.C. § 330(a)(3).

As an initial point, it is this Court's view that it should be the decision of the debtors whether they want to hire a lawyer to deal with the auditor or simply communicate with the auditor directly. The election form gives them that choice to make. Whether an attorney who is representing debtors in a bankruptcy case would advise them to use the attorney or not will vary from client to client. It may depend upon the debtor's level of sophistication or confidence in dealing with the auditor directly. It may also be affected by how complicated the process was to prepare the bankruptcy schedules in a particular case. In routine cases or where a debtor is relatively sophisticated, it may be entirely reasonable for the debtor to deal with the auditor directly.

The lack of necessity for an attorney's participation in the audit process in every case is buttressed by the fact that the auditor's request for documents covers the same kind of

4

ordinary financial documents, i.e., paystubs, tax returns, bank statements and checks, already compiled for the bankruptcy case. In addition, the auditor's examination is limited to a review of documents and does not include the power to subject the debtor to a deposition.

The issue of the "necessity" and "benefit" of the audit-related legal services is a difficult one. On one hand, the audit resulted from the bankruptcy filing so it might justifiably be said that the legal services were rendered "in connection with the bankruptcy case" within the scope of Section 330(a)(4)(B). On the other hand, the legal services related to the audit were unrelated to the confirmation and performance of the Chapter 13 plan. These services were not necessary or beneficial to the bankruptcy case, although they may have provided some benefit to the DEBTORS, even if it was not absolutely necessary for the DEBTORS to receive those services.

As the DEBTORS' attorney correctly points out, the audit related services are outside of the scope of this Court's Standing Order that defines the extent of legal services covered by the "no look" fee of $2,500 effective as to this case. Accordingly, the Court agrees with the DEBTORS' attorney that audit-related services are not already compensated by the fee of $2,500 awarded to the DEBTORS' attorney on October 27, 2006.

Since audit-related legal services are not part of the customary services that an attorney is expected to provide debtors, and in many cases the debtors may deal with the auditor directly, it may only be the exceptional case where the attorney is retained by the debtors to handle the audit. Moreover, an attorney would not have a basis to obtain compensation for such services from the bankruptcy estate in a Chapter 7 case. It is only

because this is a Chapter 13 case, where the DEBTORS' attorney fees are already being paid from the estate, that there is any possibility of additional fees being paid from the estate upon court approval.

Unfortunately, the judicial review process in this case is occurring after the services have already been rendered. In this Court's opinion, the better procedure would have been for the attorney to file an Application, in advance, seeking approval of his retention for the purpose of rendering audit-related legal services to the DEBTORS, describing the necessity for and benefit of those services, and setting forth the proposed compensation and source of payment. It would be advisable for debtors' attorneys to follow this procedure in the future in Chapter 13 cases where the debtors wish to retain them for audit-related services.

In this case, the DEBTORS' Plan is a pot plan under which they are to pay a total of $57,000 over five years. When the Plan was confirmed, the Trustee projected that unsecured creditors would be paid approximately 62% of their claims. Any additional fee awarded to the DEBTORS' attorney will not increase the DEBTORS' payments but comes out of the pocket of unsecured creditors.

A bankruptcy court has the duty to review fee applications for reasonableness. *In re Busy Beaver Bldg. Centers, Inc.,* 19 F.3d 833 (3rd Cir. 1994). The burden is on the attorney to prove that the requested compensation is reasonable. *In re Clark,* 223 F.3d 859, 863 (8th Cir. 2000). It may be appropriate for a court to reduce a fee request where the work does not involve any factual or legal complexity. *In re Jastrem,* 253 F.3d 438, 443 (9th Cir. 2001). Affirmative evidence of reasonableness is not necessarily required, however, as judges are considered experts in their own right on the question of fees and may make an award

based upon their own knowledge and experience. *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988).

A review of the time spent by the DEBTORS' attorney's time spent in relation to the audit indicates that the attorney acted as a middleman or information clearinghouse between the DEBTORS and the auditor. By all appearances, this was a problem-free audit. Of the 4.2 hours expended, 2.1 hours (in increments of .2, .3 and .5 hours) were attributed to reviewing the auditor's request or the documents produced by the DEBTORS in response, and 2.1 hours (in increments of .2 and .3 hours) were attributed to sending or receiving letters and e-mails to or from the auditor and the DEBTORS. At $200 per hour, a total attorney fee of $840 is requested. No paralegal or staff time was billed. (No explanation is offered as to why a paralegal was not utilized for what was essentially an exercise in document production.) In addition, reimbursement of $5.58 for postage and $37.40 for copies (187 pages at 20¢ per page) is requested.

The UST opposes the allowance of copying costs or other expenses related to debtor audits. The UST does not oppose an award of reasonable fees related to debtor audits but takes no position as to the reasonableness of the fees requested here.

The attorneys for consumer debtors in this District almost always work on a flat fee basis. A reasonableness inquiry calls for a comparison of the fees requested here with fees typically awarded in consumer Chapter 7 and Chapter 13 cases. In the vast majority of the Chapter 13 cases filed in this Court, the debtor's attorney charges the "no look" maximum of $2,500. The median fee charged by debtors' lawyers for consumer Chapter 7 cases (post-BAPCPA) is $500. The fees requested of $840 are one-third of the usual fee for a Chapter 13 case and 1.68 times the median fee for a routine Chapter 7 case.

The complexity of the legal work performed for the audit was much less than that required for a Chapter 7 or 13 case. No particular difficulty, factually or legally, is evident. In fact, it is difficult to identify any particular substantive legal advice given the DEBTORS. The DEBTORS were required to produce financial documents and they did so. This production was not subject to any issues or "defenses" arising with respect to document production requests in litigation, such as privilege, work product doctrine and relevance.

Moreover, since consumer debtors are routinely represented on a flat fee basis in both Chapter 7 and 13 cases, debtors' attorneys can claim no entitlement or expectation of being compensated on an hourly basis. In this particular case, there was no agreement between the DEBTORS and the attorney for compensation for the audit-related services, hourly or otherwise. Their understanding was simply that the services would not be paid by the DEBTORS.

Under the circumstances of this case, and in light of the fact that this is the first such request, the Court is willing to award additional attorney fees to be paid from the bankruptcy estate, but a reduction in the requested fees is warranted. The Court will determine a reasonable value of the services based upon the Court's knowledge and experience. In this Court's opinion, the legal services rendered for the audit have a reasonable value of $400. The UST's objection to an award of internal costs is well taken and will be granted.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###